ALFRED L. WENGER and LAURA E. WENGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ALFRED L. WENGER FAMILY ESTATE, A TRUST, LAURA E. WENGER, TRUSTEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wenger v. Commissioner
Docket Nos. 2112-78, 2171-78. [1]
United States Tax Court
T.C. Memo 1981-266; 1981 Tax Ct. Memo LEXIS 482; 41 T.C.M. (CCH) 1615; T.C.M. (RIA) 81266; May 28, 1981. Joseph Weigel, for the petitioners. Wayne B. Henry, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of Rule 180, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined *483 the following deficiencies in petitioners' Federal income tax: Taxable Year
Deficiency
Alfred L. Wenger and Laura E.
1973
$ 2,759.32
Wenger (Docket No. 2112-78)
1974
9,589.28
Alfred L. Wenger Family Estate,
1973
$ 1,799.09
A Trust, Laura E. Wenger, Trustee
1974
3,407.38
(Docket No. 2171-78)
Concessions having been made the issues for decision are (1) whether petitioners Alfred L. and Laura E. Wenger or a trust is taxable on wages and partnership income earned during the years in issue; (2) whether the income of the trust is taxable to petitioners under sections 671 through 677 of the Internal Revenue Code of 1954; [3] (3) in the alternative, if the income is taxable to the trust, whether the trust is an association taxable as a corporation under section 7701; and (4) in the alternative, if the income is taxed to the trust, whether a taxable disposition of an installment obligation occurred during 1973 when the instrument was transferred to the trust. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are *484 found accordingly. Petitioners Alfred L. and Laura E. Wenger resided in Elkhorn, Wisconsin, at the time of filing their petition herein. Petitioners timely filed joint Federal income tax returns for the taxable years 1973 and 1974 with the Internal Revenue Service Center, Kansas City, Missouri. The Alfred L. Wenger Family Estate, A Trust, Laura E. Wenger, Trustee, the petitioner in docket no. 2171-78, had its principal office in Elkhorn, Wisconsin, at the time of filing its petition herein. The trust timely filed its Federal income tax returns for the taxable years 1973 and 1974 with the Internal Revenue Service Center, Kansas City, Missouri. On June 25, 1973, petitioner Alfred L. Wenger (hereinafter petitioner) executed a document entitled "Declaration of Trust of this Constitutional Trust." The document was executed by petitioner for the purpose of creating a trust known as the Alfred L. Wenger Family Estate, A Trust, (hereinafter Trust). The declared purpose of the Trust was: "* * * to accept rights, title and interest in real and personal properties conveyed by THE GRANTOR CREATOR HEREOF. Included therein is the exclusive use of his or her lifetime services and ALL *485 OF his or her EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that Alfred L. Wenger can maximize his lifetime efforts through the utilization of his Constitutional Rights; * * *." Petitioner's wife Laura E. Wenger (hereinafter Laura) and his son R. Logan Wenger (hereinafter Logan) were the intitial trustees of the Trust. On June 27, 1973, petitioner and Laura were appointed trustees to hold office for the life of the Trust. Thereafter during the years herein there were no further changes in the trustees. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. Petitioner executed other documents on July 2, 1973 for the purpose of conveying his real and personal property, including a 50 percent partnership interest in Millard Machine Shop (Millard) to the Trust. The real property, including petitioner's home, was jointly owned by petitioner and his wife prior to the conveyance to the Trust. Laura transferred her interest to petitioner prior to his conveyance to the Trust. In addition, *486 on July 2, 1973, petitioner executed a document to convey the exclusive use of his lifetime services and all of his currently earned remuneration accruing therefrom to the Trust. Laura also conveyed the use of her lifetime services to the Trust. In exchange for the real and personal property, and the conveyance of petitioner's earned income, the Trust issued all of its 100 units of beneficial interest to petitioner on July 27, 1973. On this same date petitioner transferred 50 units to Laura and, thereafter, on July 27, 1973, petitioner and Laura made transfers so that each of their three children owned 20 units and petitioner and Laura owned 10 units and 30 units, respectively. The rights of the owners of the units of beneficial interest were prescribed in the Declaration of Trust and the certificates of beneficial interest. The Declaration of Trust provides, in part, that "* * * Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to the Trust property, nor any undivided interest therein, nor in the management thereof; nor shall the death of the holder entitle his heirs or legal representatives to demand any partition or division of the *487 property of the Trust * * *." This document goes on to declare that "It is expressly declared that A Trust, and not a partnership, is hereby created; and that neither the Trustees, officers, or certificate holders, present or future, have or possess any beneficial interest in the property or assets of Said Trust * * *." The rights of the owners of the beneficial interests are also set forth in the Certificate of Beneficial Interest, which certificates provide that "Benefits hereby conveyed consist solely of the emoluments as distributed by the actions of the trustees and nothing more. * * *" The trustees were authorized, by the Declaration of Trust, "* * * to do anything any citizen may do in any state or country * * *." Further, "* * * Resolutions of The Trustees authorizing what it is they determine to do or have done shall be evidence that such an act is within their power. * * *" Prior to and during the years herein petitioner was an active partner in the Millard Machine Shop partnership. The partnership was formed with petitioner's son and performed various machine shop functions. Although petitioner's distributions from the partnership were deposited in the Trust bank *488 account, there was no other visual or substantive change in the operation of the partnership before or after the formation of the Trust. On July 2, 1973, petitioner and Laura entered into an employment contract with the Trust which provided that petitioner would serve as the Executive Manager and Laura would serve as Executive Secretary, both to serve for the life of the Trust. The agreement further provided that "The Managers shall be entitled to remuneration for their services and shall from time to time submit statements for their consultant fees for an amount mutually agreed upon between the Managers and the Trustees, substantiated by the minutes of the Trust." During each of the years 1973 and 1974, the Trust paid personal expenses of petitioner and Laura, including housing, transportation, health care, and vacations. In addition the Trust paid petitioner and Laura consulting fees totaling $ 3,000 and $ 5,575 for the years 1973 and 1974, respectively. The consulting fee was based on the personal needs of petitioner and Laura and not based on the services performed. On its 1973 and 1974 Federal income tax returns the Trust reported the income petitioners earned from *489 wages, rent and partnership income. Also, the Trust reported capital gain income from an installment sale obligation petitioner transferred to the Trust. In addition the Trust deducted for each of the years "administrative" expenses which consisted of petitioner's personal, living and family expenses and "consulting fees" paid by the Trust to petitioner and Laura. After the Trust was formed petitioner and Laura reported the consulting fees received from the Trust and interest income on their 1973 and 1974 Federal income tax returns. Respondent determined that all of the income from wages, the partnership and the capital gain reported by the Trust are income of petitioners, not the Trust. In the alternative, respondent determined that if the income and expenses are taxable to the Trust, then the Trust should be treated as an association taxable as a corporation pursuant to section 7701. OPINION The first issue to consider is whether petitioners or the Trust is taxable on the various amounts of income earned during the years herein. Respondent's basic position with regard to this issue is that the Trust established by petitioner is illusory and has no economic significance *490 and should be disregarded for income tax purposes. In addition, respondent sets forth alternative arguments to support his position that the income reported by the Trust is properly taxable to petitioners. Since we fully agree with respondent's basic position, our opinion will be limited to this extent. Petitioners argue that they have a constitutional right to enter into a contract with the Trust for their services and to convey their property to the Trust. Further, they argue that since a valid trust was created the income earned from their services and property is properly taxable to the Trust. Petitioners recognize they performed their services in the same manner both before and after formation of the Trust, but maintain that the Trust had the right to engage petitioners as independent contractors and to vend their services to third parties. The petitioners also point out that since the partnership interest and their other assets were in fact transferred to the Trust at least the income from these sources should be recognized as that of the Trust. Although it is clear that the income from wages earned by Laura for her services as an employee is taxable to her since she *491 earned and maintained control over the income in spite of the formation of the Trust under the doctrine set forth in Lucas v. Earl, 281 U.S. 111 (1930), the facts in this case compel us to go beyond this doctrine and to concur with respondent's determination that the Trust has no economic substance and, on this basis must be totally disregarded for income tax purposes. Markosian v. Commissioner, 73 T.C. 1235 (1980). Based on the various documents executed by petitioners, the appearance of a trust was established. However, upon an examination of the Trust document and the actual operation of the Trust, it is without question that the Trust rests on a foundation of meaningless pieces of paper. As we said in Markosian v. Commissioner, supra at 1241, "When the form of the transaction has not, in fact, altered any cognizable economic relationships, we will look through that form and apply the tax law according to the substance of the transaction. Furman v. Commissioner, 45 T.C. 360 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967)." In the instant case we see no change in economic relationships. *492 Under the circumstances in this case it was virtually impossible for petitioners to change the economic relationship between themselves and the other beneficiaries. Petitioners had no meaningful source of income other than from Laura's wages and the partnership income which compelled the Trust to pay the majority of their personal expenses. But more important is the grant of absolute and complete discretion to petitioners as lifetime trustees by the trust language "A Minute of Resolutions of The Trustees authorizing what it is they determine to do or have done shall be evidence that such act is within their power." Such an unbridled power gives petitioners as trustees the same control over the property conveyed to the Trust as they enjoyed prior to the formation of the Trust. Accordingly, in spite of the Trust, there was no change in petitioners' economic position. In addition, we do not accept as an economic reality the assignment of petitioners' future services and income to the Trust solely in exchange for an indefinite payment for such services without assurance to petitioners of complete control of the future income to be earned by them. In fact, there was no understanding *493 concerning the payment of consulting fees for petitioners' services. Instead petitioners were paid an amount based on their personal needs. Under these circumstances we cannot find that petitioners had a meaningful or enforceable employment contract with the Trust. Based on the facts herein, it is clear that the Trust had no independent economic significance during the years at issue and the Trust should be disregarded for income tax purposes. For other cases where we held that trust arrangements similar to the one herein were not effective to shift the incidence of taxation from the taxpayer toia trust, see Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980); Markosian v. Commissioner, supra; Wesenberg v. Commissioner, 69 T.C. 1005, 1011 (1978); Vnuk v. Commissioner, 621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164; Horvat v. Commissioner, T.C. Memo. 1977-104, affd. by unpublished order (7th Cir. June 7, 1978), cert. denied 440 U.S. 959 (1979); Taylor v. Commissioner, T.C. Memo. 1980-313; and Gran v. Commissioner, T.C. Memo. 1980-558. *494 To reflect the conclusions reached herein Decisions will be entered under Rule 155. Footnotes
1. These cases were consolidated for the purposes of trial, briefing, and opinion.↩
2. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩
3. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩